UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ARTESIA SPRINGS, LLC, <br> HOD ENTERPRISES, L.P., <br> and BBB WATER, INC., <br><br> Plaintiffs, <br><br> v. <br><br> DS WATERS OF AMERICA, INC., <br> and PRIMO WATER CORPORATION, <br><br> Defendants. | § § § § § § § § § § § § § | SA-14-CA-791-OLG (HJB) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns: (1) Defendant Primo Water Corporation's Motion to Dismiss, to Compel Alternative Dispute Resolution, and to Stay Proceedings (Docket Entry 15); (2) Defendant DS Services of America, Inc.'s Motion to Dismiss and to Compel Alternative Dispute Resolution (Docket Entry 29); (3) Plaintiffs' Request for Oral Hearing (Docket Entry 21); and (4) Plaintiffs' Motion for Leave to File Original Complaint (Docket Entry 19). Dispositive pretrial matters have been referred to the undersigned for recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. (*See* Docket Entry 28.)

I.   **Jurisdiction.**

The district court has original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1) because the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000. I have authority to issue this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

II.   **Background.**

Defendant Primo Water Corporation ("Primo") produces drinking for sale to consumers, generally through major retail stores. (Docket Entry 15, at 2.) Plaintiffs Artesia Springs, LLC ("Artesia"), HOD Enterprises, L.P. ("HOD"), and BBB Water, Inc. ("BBB") are distributors of Primo products. (Docket Entry 1-1, at 10.) Each Plaintiff has distribution rights provided to them under written agreements with Primo ("Distribution Agreements"). (*Id.*)

On September 5, 2014, Plaintiffs filed suit against Primo and another Defendant, DS Waters of America, Inc. ("DSW"), in the 166th Judicial District Court of Bexar County, Texas. Plaintiffs allege that Primo and DSW entered into a "strategic alliance" which required Primo to prematurely terminate or breach its Distribution Agreements with Plaintiffs. (Docket Entry 1-1, at 10.) They further allege that "the ultimate goal of breaching the agreements and forcing out the distributors was to replace [Plaintiffs] with Primo's strategic partner, DSW." (*Id.*) Plaintiffs' complaint includes claims against Primo for breach of contract and fraud, claims against DSW for tortious interference with contract, and claims against both Primo and DSW for conspiracy and malice. (Docket Entry 1-1.) Plaintiffs also seek a declaratory judgment and equitable relief, including specific performance and an injunction. (*Id.*)

Defendants removed the action to this Court based on diversity jurisdiction. (Docket Entry 1.) Primo then moved to dismiss all of the claims against it, compel mediation, and stay any remaining proceedings against DSW. (Docket Entry 15.) Plaintiffs thereafter moved to amend their complaint to add causes of action against Primo for conspiracy to commit fraud and against DSW for tortious interference with business relations. (Docket Entry 19.) Subsequently, DSW separately moved to dismiss Plaintiffs claims against it and to compel arbitration. (Docket Entry 29.)

### III.   Primo's and DSW's Motions to Dismiss.

Primo and DSW each move the Court to dismiss Plaintiffs' claims and compel mediation. (Docket Entries 15, 29.) They rely upon the "Dispute Resolution" provision contained in the respective Distribution Agreements signed by both Primo and each of the Plaintiffs.[1] (*Id.*) The "Dispute Resolution" provision is identical in each of the Plaintiffs' Distribution Agreements and states:

> Any dispute or disagreement involving or including Primo and which pertains to or arises out of this Agreement or the Business shall be settled by non-binding mediation to be conducted in Winston-Salem, North Carolina by a mediator selected jointly by the parties or, in the absence of agreement on mediator selection, by a mediator appointed by the American Arbitration Association in accordance with its rules and provisions pertaining to non-binding mediation in commercial disputes. Except for the parties' own expenses, which shall be borne individually, the parties shall jointly share the costs and expenses of such mediation. If such mediation fails to resolve such dispute or disagreement, then the dispute or disagreement shall be settled by arbitration to be held in Winston-Salem, North Carolina, in accordance with the rules of the American Arbitration Association, or its successor. The decision of the arbitrator shall be conclusive and binding on the parties to the arbitration. The prevailing party in any arbitration shall be entitled to recover from the other party or parties, the costs and expenses of maintaining such arbitration, including reasonable attorney's fees and costs incurred before such arbitration is commenced, during arbitration and on appeal.

---

[1] As discussed below, DSW was not a party to the Distribution Agreements.

3

(Docket Entry 15, at 32, 50, and 78.)

Primo and DSW argue that under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–2, the Distribution Agreements mandate that the disputes raised in this case be mediated and, if necessary, arbitrated. (Docket Entry 15, at 5; Docket Entry 29, at 4–5.) The FAA provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

There is a strong presumption in favor of arbitration under the FAA. *See* 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As a matter of federal law, arbitration agreements and clauses are to be enforced unless they are invalid under principles of state law that govern all contracts. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004). Therefore, "generally applicable contract defenses, such as fraud, duress, unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). The FAA "provides for . . . orders compelling arbitration when one party has failed or refused to comply with an arbitration agreements." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (citing 9 U.S.C. §§ 3, 4.)

Courts employ a two-step analysis to determine whether a party may be compelled to arbitrate. *JP Morgan Chase & Co. v. Conegie*, 492 F.3d 596, 598 (5th Cir. 2007). First, the Court determines whether the party has agreed to arbitrate the dispute. *Id.* If the party has agreed to

4

arbitrate, the Court then asks whether any federal statute or policy renders the claims nonarbitrable. *Id.*

Plaintiffs appear to concede that their claims against Primo are subject to the "Dispute Resolution" provision of the Distribution Agreements. They do not contend that the Distribution Agreements were procured through fraud or duress or that they did not agree to them; nor do they argue that the Distribution Agreements are invalid because they are unconscionable or violate public policy. Instead, Plaintiffs argue that their claims against DSW cannot be subject to the arbitration requirement because Plaintiffs have not contracted with DSW, and DSW is a not a signatory to the Distribution Agreements. (Docket Entry 20, at 3; Docket Entry 34, at 1.) Plaintiffs argue that splitting their claims, with the claims against Primo in arbitration and those against DSW in district court, would result in "judicial dysfunction." (Docket Entry 20, at 2.) They also argue that proceeding in two separate forums against two conspiring defendants deprives them of due process. (*Id.* at 4.) Because the conspiracy claims against Primo cannot be separated from the conspiracy claims against DSW, Plaintiffs argue that all the claims against Defendants should go forward in district court. (*Id.*)

DSW responds that the claims against it are also subject to the "Dispute Resolution" provision in the Distribution Agreements and should therefore be mediated and/or arbitrated. (Docket Entry 29.) DSW contends that equitable estoppel applies to enforce the "Dispute Resolution" provisions against Plaintiffs, since Plaintiffs seek to hold it, a non-signatory, liable under the duties imposed by Plaintiffs' agreements with Primo. (*Id.* at 6.) It asserts that Plaintiffs are "estopped from simultaneously attempting to seek benefits from the contract while attempting to avoid the contract's obligation to arbitrate disputes." (*Id.*)

In opposing DSW's contention that equitable estoppel applies, Plaintiffs argue that state law governs whether non-signatories can be bound by or benefit from an arbitration agreement. (Docket Entry 34, at 2–3.) Plaintiffs argue that, under North Carolina law,[2] equitable estoppel cannot be used to force them arbitrate their claims against a non-signatory like DSW because their claims are not based on the underlying Distribution Agreements. (*Id.*) Plaintiffs contend that because they seek to hold DSW accountable in tort damages, and not for any contract damages, they do not seek any direct benefit from the contract between Plaintiffs and Primo. (*Id.* at 3–4.)

DSW, on the other hand, argues that both federal and state law can be applied to determine the issue of whether non-signatories can enforce arbitration agreements. (Docket Entry 29, at 7.) They argue that, in addition to Fifth Circuit law, both the Fourth Circuit and North Carolina law have determined that "a non-signatory to an arbitration clause may, in certain situations, compel a signatory to the clause to arbitrate the signatory's claims against the nonsignatory despite the fact that the signatory and nonsignatory lack an agreement to arbitrate." (Docket Entry 29, at 7 (quoting *Erichsen v. RBC Capital Mkts., LLC*, 883 F. Supp. 2d 562, 571 (E.D.N.C. 2012)).

North Carolina law applies in this instance to determine whether DSW may compel Plaintiffs to arbitrate their claims against it. Neither § 2 nor § 3 of the FAA "purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 257 (5th Cir. 2014) (quoting *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009)). Therefore, when

---

[2] Neither party disputes that North Carolina law is applicable, under the Distribution Agreements' choice-of-law provision. (Docket Entry 31, at 1; Docket Entry 29, at 7; Docket Entry 34, at 2.)

6

relevant, state contract law allows "a contract to be enforced by or against nonparties to the contract through . . . estoppel." *Arthur Anderson*, 556 U.S. at 631. As such, if North Carolina contract law permits, an arbitration contract can enforced by or against nonparties to the contract through equitable estoppel. *Id.*

North Carolina law allows a party to assert equitable estoppel to preclude "a party from asserting rights 'he otherwise would have had against another' when his own conduct renders assertion of those rights contrary to equity." *Ellen v. A.C. Schultes of Md., Inc.*, 615 S.E.2d 729, 732 (N.C. Ct. App. 2005) (quoting *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000)). "In the arbitration context, the doctrine recognizes that a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him." *Ellen*, 615 S.E.2d at 732 (quoting *Schwabedissen*, 206 F.3d at 418). "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act." *Id.* (internal quotations omitted).

In determining when a non-signatory to an arbitration agreement may compel arbitration against a signatory, North Carolina courts follow the Fourth Circuit. *See Ellen*, 615 S.E.2d at 732. Like the Fifth Circuit, the Fourth Circuit has adopted the "intertwined claims test" for this determination. *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005); *see Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000) (same). Under this test, arbitration may be compelled when the signatory's claims against a non-signatory refer to or presume the existence of the written agreement, the claims arise out of and relate directly to the

7

agreement, and arbitration is appropriate. *Brantley*, 424 F.3d at 395–96. Alternatively, arbitration may be compelled when the signatory alleges substantially interdependent and concerted misconduct by the non-signatory and one or more signatories. *Id.* In either instance, the underlying complaint should be examined to determine whether estoppel should apply. *See Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 626–27 (4th Cir. 2006).

As pled, Plaintiffs' complaint satisfies both parts of the "intertwined claims test." Plaintiffs have alleged claims against DSW for tortious interference with contract, conspiracy, and malice. (Docket Entry 1-1.) Plaintiffs' claim for tortious interference with contract directly references the underlying Distribution Agreements by stating that "Plaintiffs and Primo had valid and binding contracts, and DSW tortiously interfered with the contracts by inducing and facilitating Primo's breach of its contracts with Plaintiffs." (Docket Entry 1-1, at 12.) Plaintiffs' claims of conspiracy and malice likewise directly relate to the Distribution Agreements with Primo—Plaintiffs state that "DSW conspired with Primo to tortiously interfere with Plaintiffs' contracts with Primo" and that "Primo and DSW acted maliciously and fraudulently against Plaintiffs in order to force Plaintiffs to give up their rights under the distribution agreements." (*Id.* at 12–13.)

In evaluating Plaintiffs' causes of action, it must also be "examine[d] whether the plaintiff has asserted claims in the underlying suit that, either literally or obliquely, assert a breach of a duty created by the contract containing the arbitration clause." *Long*, 453 F.3d 629. Although claims may be phrased in tort, a plaintiff "may not use artful pleading to avoid arbitration" when claims attempt to hold a defendant liable according to the terms of a contract. *Id.* at 630. Here, although Plaintiffs have phrased claims against DSW as sounding in tort, their claims are based on the Distribution Agreements they signed with Primo. (*See* Docket Entry 1-1.)

8

Contrary to Plaintiffs' contention, none of the claims against DSW are independent of the legal duties imposed by contract law. *Cf. Ellen*, 615 S.E.2d at 733 ("Neither plaintiffs' allegations of unfair and deceptive trade practices nor plaintiffs' allegations of tortious interference depend upon the contracts containing the arbitration clause.").[3] Plaintiffs' claims rely on the Distribution Agreements, which they do not dispute are valid, as the basis for their claims against DSW. Indeed, Plaintiffs seek enforcement of the agreements in this lawsuit. (*See* Docket Entry 1-1, at 16.) When "each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Long*, 453 F.3d at 627 (quoting *Brantley*, 424 F.3d at 395–96 (internal citations omitted)). Because they are suing DSW to protect their rights under the Distribution Agreements, Plaintiffs are estopped from denying the applicability of the Dispute Resolution provisions that those agreements contain.

In sum, there is no question that Plaintiffs agreed to arbitrate the disputes arising out of the relationships set forth in the Primo Distribution Agreements. Their signatures appear, respectively, on each of the Distribution Agreements and they do not challenge the validity of them. (*See* Docket Entry 15, at 33, 51, 79.) Therefore, the requirements to dismiss the case and compel arbitration are met. Additionally, under the principles of equitable estoppel, DSW, even as a non-signatory to the Distribution Agreements, may compel arbitration of the claims against it.

---

[3] In *Ellen*, the plaintiffs' tortious interference claims involved one contracting party's interference with the other contracting party's outside business relationships. *Ellen*, 615 S.E.2d at 733. Here, by contrast, the tortious interference alleged is third party interference with the contracts between the other parties—the contracts containing the arbitration clause. (*See* Docket Entry 1-1.)

Accordingly, after taking into consideration the parties' arguments as well as the strong presumption in favor of arbitration, Primo's motion to dismiss (Docket Entry 15) should be granted as to its request to dismiss Plaintiffs' claims and compel mediation, but denied as moot as to its request to stay any proceedings against DSW. DSW's motion to dismiss and compel arbitration (Docket Entry 29) should be granted. Plaintiffs' claims should be dismissed without prejudice[4] in favor of arbitration in North Carolina.[5] In light of this recommendation, Plaintiffs' request for oral hearing on the motions to dismiss (Docket Entry 21) should be denied as moot.

## IV.    Plaintiffs' Motion to Amend.

After Primo filed its motion to dismiss and compel mediation, Plaintiffs filed a motion to amend the complaint they previously filed in state court. (Docket Entry 19.) In the proposed amended complaint, Plaintiffs request leave to add causes of action against Primo for conspiracy to commit fraud and against DSW for tortious interference with business relations. (*Id.*) Primo filed a response in opposition, arguing that amending the complaint to add these claims is futile on the same basis it argued in its motion to dismiss and compel mediation that any claims against it are

---

[4] Section 3 of the FAA requires courts to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement." *See* 9 U.S.C. § 3. However, the Fifth Circuit instructs courts to dismiss litigation without prejudice "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original).

[5] Because the validity of the Distribution Agreements is not in dispute, then Plaintiffs' request that any order compelling arbitration not address venue is without merit. (See Docket Entry 20, at 6.) The "Dispute Resolution" provision of the Distribution Agreements clearly states that mediation and/or arbitration is to take place in Winston-Salem, North Carolina. (Docket Entry 15, at 32, 50, and 78.)

subject to mandatory alternative dispute resolution. (Docket Entry 30.) DSW did not file any response to Plaintiffs' motion to amend.

The Federal Rules of Civil Procedure provide that leave to amend pleadings "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The policy of the Federal Rules is liberal in favor of permitting amendment of pleadings, and Rule 15(a) favors the granting of leave to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). However, leave to amend is by no means automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). Relevant factors to consider in deciding whether to permit amendment include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

Plaintiffs' request for leave to amend their complaint is futile for the reasons previously discussed. The addition of Plaintiffs' claim for conspiracy to commit fraud is simply an expanded recitation of its earlier claim for conspiracy. (*Compare* Docket Entry 1-1, at 12, *with* Docket Entry 19-1, at 4–5.) In the amended complaint, Plaintiffs' claim for conspiracy to commit fraud against both Primo and DSW is premised on the underlying Distribution Agreements between Plaintiffs and Primo. (Docket Entry 19-1, at 5.) As such, Plaintiffs' are equitably estopped from denying application of the "Dispute Resolution" provision of the Distribution Agreements. Adding this claim would not prevent Plaintiffs from being subject to mediation and/or arbitration in accordance with the Distribution Agreements.

11

Nor would the requirement for arbitration be defeated by Plaintiffs' request to add a claim against DSW for tortious interference with continuing and prospective business relationships. (*See* Docket Entry 19-1, at 6.) Plaintiffs allege this action against DSW on the basis that DSW "knew of Plaintiffs' agreements with [Primo] and induced Primo to minimalize its business relationships with Plaintiffs and enter into a 'Strategic Alliance' with" DSW. (*Id.*) Again, this claim directly relates to the Distribution Agreements themselves; as such, Plaintiffs are equitably estopped from denying applicability of the "Dispute Resolution" provision to DSW.

Accordingly, Plaintiffs' motion for leave to file an amended complaint (Docket Entry 19) should be denied because such amendment is futile.

## V. Conclusion and Recommendation.

Based on the foregoing, I recommend that Defendant Primo Water Corporation's Motion to Dismiss, to Compel Alternative Dispute Resolution, and to Stay Proceedings (Docket Entry 15) be **GRANTED IN PART**, and **DENIED AS MOOT IN PART**; that Defendant DS Services of America, Inc.'s Motion to Dismiss and to Compel Alternative Dispute Resolution (Docket Entry 29) be **GRANTED**; that Plaintiffs' Request for Oral Hearing (Docket Entry 21) be **DENIED AS MOOT**; and that Plaintiffs' Motion for Leave to File Original Complaint (Docket Entry 19) be **DENIED**. All of Plaintiffs' claims should be **DISMISSED WITHOUT PREJUDICE** in favor of arbitration.

## VI. Instructions For Service And Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return

receipt requested. Written objections to this report and recommendation must be filed **within fourteen days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

    **SIGNED** this 13th day of January, 2015.

                                                  Henry J. Bemporad
                                                  United States Magistrate Judge